Chief Justice Roburtkox,
delivered the opinion of tlio court
Tins appeal is prosecuted to reverse a judgment of $1,000, obtained by the appellee against the appellants in an action of assault and battery, which he instituted against them and others.
The appellants urge the following objections to the judgment:
1st. The circuit court erred in refusing to compel a; witness, who had been introduced by the appellee, to an • swera question propounded to him by the counsel for the appellants, ád. The court erred in refusing to instruct the jury, upon a motion made by the appellants. 3d. The court erred fn giving instructions at the instance of the appellee, 4th. The court erred in overruling a motion for a new trial.
These objections will be disposed of in their numeiical order.
1st. It appears that when the battery on the appellee (for which thissnit was hroaght,) was committed,John McG ee, Samuel McGee and iSeth McGee, broi hereof the appellee, were also beaten by the appellants, or some of them; the battle commencing with John Mellen and James Sodusky, and being continued until all four of the McGee’s were “whipp'dfrom the fieldand that,in attempting to rescue John McGee, the appellee was attacked, and therefore, especially as diere was evidence tending to prove that a combined and preconcerted attack was made on the McGees, the cou>d permitted an inquiry into all the circumstances attending the whole affray.
John ('downing, a witness for the appellee, havhaving sworn to facts which occurred in the rencounter between íáe.lh McGee and some of the appellants, was asked by their counsel, “-if he was not >‘>igag-d at the time, or shortly before the commencement of that, fight,'some distance off playing cards with, a negro fslioio'f The appellee’s counsel having objected to the question, the court refused to permii the witness to answer it. An *622 exception to this interposition by the court, lays the foundation of the first objection.
.“lufiiwy"’ ile* finoil; “degradation” not.
Witness not compelled to prove his own “general character” nor any fact, unless pertinent to the issue independent of his ''character.
The reason assigned by the court for arresting the interrogatory is, that an affirmative answer involved the degradation and perhaps the punishment of the witness. A witness cannot be compelled to testify to any fact which might subject him to punishment or to a penalty, or which would render him infamous. But for simply playing cards, or even playing' cards with a negro, no punishment or penalty has been denounced by law. Nor would such an act, per se, necessarily render a white man “infamous.” The term “ infamous” has a technical import more extensive than mere degradation or reproach. Whether or not a witness should be compelled to swear to any fact which might tend to his depredation has been rendered, by modern dicta, a vexed question.
“Infamy” is defined bylaw; but disparagement, abstractly considered, is not defined by law, but depends on accidental circumstances. It would be difficult for a court to determine, as a conclusion of law, what fact (which would not prove infamy,) would degradea witness or bring reproach upon him. And it would be even more difficult to decide what degree of degradation or disparagement would result from a given fact, tfr how l@w the scale must sink before a witness shall ■ be protected. Could a court decide that ploying cards is degrading, or that it is sufficiently so to entitle a witness to the benefit of the maxim that “no one shall be compelled to be a witness against himself?”
A witness should not be compelled to prove his own general character; nor should lie be required to prove any special fact reflecting on his character, unless it be pertinent to the issue independently of its tendency to affect character, llis character could not be assailed by proof by other witnesses, of particular facts; and certainly it would be improper to compel him to prove facts relating to his character which others would not be permitted to prove. But if the fact be, in itself, pertinent and legitimate, it is, at least, very questionable on principle as well as authority, whether a witness should, as a matter of course, be excused front answering a question relating to it:, merely because art *623 answer might, in some. de,grc.\ tend to subject him to reproach, not infamy; or might tend to roiled, on his character some degree of disparagement. bee Starkic’s Evidence, 337-3-9-44.
yy¡fucos.,. lone, has a right to obJt¡qqto a3UCS~ nent except, 'himseíf!” Otherwise if impertinent,
if t]le qu(,-5. tion proP0UIrte<i bo ^nd iii part not, objectionto an-be sustained'
It may be doubted whether this point has ever been •authoratively decided, so as to furnish any fixed rulo-for the courts of this state. Anciently a witness might "have been compelled to answer a question which reflected infamy upon him. Peake, 153-39. But this doctrine has been overruled by modern cases. See Cook’s case, State Trials, 748; Salk. 153; the People vs. Herrick, XIII Johnson, 82.
IIow far the tendency of a question to disparage a witness, without rendering him infamous, may entitle him to be excused from answering it, lias not been, so far as we know, settled by authority. It must be determined by policy and principle; and we shall not now attempt to decide it, because its decision is not necessary in this case. Chovyning did not object to ihe question.
If it were admitted that a witness could not be com-polled to answer,when his answer mighl reflect discreditably on himself, nevertheless he would surely have a right to answer; and consequently the party has a right 'to propound the question.
If there had been no other objection to the question than its tending to reflect on the witness prejudicially, he alone had a right to make that objection. The court had no right to inierpose unless the witness had been unwilling to answer the question, or unless it was impertinent.
But the question was irrelevant; and, therefore, the circuit court acted correctly in notpermitting. the witness to answer it.
The question must be considered in the form in which the party chose to propound it. Although it is disjunctive and divisible, it was not the duly of the circuit court to modify or dismember it, and then direct the witness to answer it as remodeled; nor was it the duty of the witness to answer a part of it which was proper, and refuse to respond to so much only as was irrelevant. If it was a pertinent and proper question, as presented* it ought to have been answered; but *624 if, as proposed, it was, as an unit, irrelevant altogether or only in part, the court ought to have sustained the objection to it.
Now, it is evident that so much of the question as required the witness to state whether lie was not playing cards before the aifniy commenced, was totally irrelevant. If he liad been playing caids at the time when the facts occurred to which he had sworn, a question to that effect might have; been proper, because an affirmative answer might have tended, in some degree, to detract from the credibility of bis testimony, by shewing that he was r.ot probably as observant of tiie incidents of the aff.ay as others were, whose, attention had not been, like his, divided between that and any other object, or had not been, as perhaps his was, exclusively engrossed by any other simultaneous transaction.
So much of the question as required the witness to state whether he was not playing cards with a negro, was also irrelevant. For any legitímale end, it was material only to shew, that he was 'playing cards during the rencounter to which he had deposed; and it was. of course, immaterial with whom 'te was engaged, unless (he object of the question was to aífécl the character of the witness; and then, as already shewn, the counsel for the appellee, as well as (he witness, had a right to object to it, because that was not the legal mode of attacking his character.
The question, taken as an entieriy, was, therefore, irrelevant, arid the appellants have no right to complain that the court did not in.s.ruct them how to propose it, and refused to permit (he witness to answer it in its illegal shape. The ‘decision of the court is, therefore, so far, right, although the reason assigned for it may not be a proper one.
2d. The appellants having proved that John McGee had said, several days prior <.o t ie affray, tint James Sodu-,ky had acKnowledgc.l that he had had criminal intercourse with his (McGee’s) wife, and that he (McGee) said lie would kill said Sodusky if he should ever speak to him; the counsel for the appellee insisted in his argument to the jury, that this fact was evidence •ofSodusky’s criminal conversation with McGee’s wife.
If the fact attempted to be elicited by-question be ¡impertinent, question should be o* verruled.
•If declarations of person could not be used against himself a fortiori they could not be used against others; and consequently must be incompetent.
"Whereupon, the court refused, on the motion of the appellants, to instruct the jury that McGee’s declaration, was not evidence of such intercourse between Sodusky and McGee’s wife; stating, as the reason for the refusal, that, as the declarations of J. McGee had been introduced by the appellants, the appellee had a right to insist on the jury’s considering the whole statement, and giving such credence to it, or any part of it, as they should deem it entitled to. We are not able to perceive any valid objection to this opinion of the court.
The whole of John McGee’s statement was impertinent, lie was no party. Nothing which he had said or done could justify the battery on the appellee, or mitigate the damages to which he was otherwise entitled. The object of associating all the several batteries and other circumstances, by, the proof in this case, was to prove a combination among the appellants, to make a preconcerted attack on the McGees. Such a course of examination was allowable, when restricted and guarded properly. But no declaration of John McGee, made weeks or perhaps months prior to the battery, would iiave been admissible evidence, in justification or even in mitigation, in.his own case;,,
Much stronger is the reason why such a declaration was irrelevant in this case. For if it could have been any justification or palliation of the battery on John McGee, purely it could not have justified or palliated a combination against, or a battery upon, the appellee.
The appellants could not have effected any just or legitimate purpose by the introduction of such facts. Their only tendency was to inflame the passions of the jury. The court ought to have excluded all such extraneous matter. Its introduction into the cause, if it had any effect, must have drawn off the minds of the jurors from the facts which alone ought to have regulated their verdict; and it is not at all improbable that a higher verdict against the appellants, than would have been otherwise rendered, has been the consequence. But they have no right to complain. They went out of their legitimate sphere in quest of an advantage, and if their effort has failed, or its contem *626 plated effect has, by an unexpected recoil, been injurious to themselves, 1 hey must acquiesce. As they had used J. McGee’s declarations for their own benefit, the appellee had a-legal right to counteract them with their ■own weapon. The'court did not tell the jury, that-what John McGee said was 'proof of a criminal connexion with his wife by James Sodusky. This would have been error. But the court told the jury that all •that J. McGee said, ought to he taken together, and that one part of his declaration was'as much evidence as another part. This is strictly according to the rule of law, and the dictate of common sense. After the, appellants had made use of the declarations of J. McGee, and concluded their argument-upon them, it -would not have been proper for the court to have excluded them, anfi thus deprived the counsel for the •appellee of the right to use them, in his closing argument to the jury.
Joint verdict "vs. all con cerned in an assau.lt ami battery cor- ' tect."
Appropriate terms restrair and correct inappropriate.
Assault and battery vs. several, one acquitted another found guilty on weaker testimony no ground of objection to verdict.
3d. The court instructed the jury, that they ought, to find a joint verdict against, all the defendants whom they might find guilty; that no assault,which J. McGee may have made on James Sodusky furnished a justification for the battery on the appellee, and that nil the appellants, who counseled, abetted or arranged in producing the assault, were equally guilty with those ivho struck.
These instructions are all conformable to the law.
The only objection which has been made to them is,'that the word arranged in -the last was improper and delusive.
.It was certainly inappropriate; but used, as it was* in connexion with the other expressions, and with the facts proved, its import was clear, and its effect could not have been illegal ot delusive.
4th. The evidence justified a verdict against all .the appellants. Their counsel insist that there is no proof against one of them, Onan. We think differently. We admit that the evidence against Onan is not so strong as that against Peter Gatewood, who was acquitted; but this does not prove that it was not strong enough to sustain the verdict. Neal swore that the Onans were present, and that they and others “seemed to be a companyDixon swore that Seth McGee was -puisued by Gatewood and Onan; he did not state *627 which of the Onans. Patrick swore to the same fact.. George swore that P. Gatewood and Onan Seth McGee, and having overtaken him he was od down. Singleton swore substantially to the same íáct. Lamb swore that he saw Seth McGee and Onan “engage.” Scott swore that “Mr. Onan” struck James- McGee. J. Neal swore that “one of the Onans ran up- and joined in the fight.”
Haggin and Crittenden-,- for appellants; Denny, forappellee;
Although'tins testimony is not conclusive, or very-, certain as to the appellant, Dennis Onan,.yet it is such asjústified tlieverdict against him.’
The testimony against Jacob Sodusky is still less direct;. But even that is sufficient to sustain the verdictagainst him, • There is no proof,whatever that he struck .or assaulted the appellee. But there are facts tending to shew, that he was one of a party raised to beat the McGees, and that he was present ready to aid, anddhereby abetting those who were more knme* diately engaged. In such a.case this court would not be authorized, by authority or precedent to set aside the verdict of the jury for want of evidence’of. Jacob So-dusky’s legal’, participation in the affray.
As to the- other appellants, no question has been, made. There-can be no doubt that the evidence authorized the verdict against them.
The amount of the verdict presents no. sufficient-cause for a new trial-
judgment affirmed.

The counsel for ike appellants filed the following petition for- a re-hearing

This suit was predicated upon á battle between a number of able men on each side, in a muster field, commenced the instant after the.-compariy was discharged, between James Sodusky and John McGee, and extended to their respective friends. ■
It was attempted on the part of the plaintiff, to prove that the attack was made by the defendants, by previous concert; whilst the defendants endeavored- to maintain, that the assault was on the part of the brother *628 of the plaintiff; that the plaintiff had anticipated it; was armed and ready, and instantly engaged in the . combat.
We will not annoy this honorable court, who are eorhpelled to encounter so many vexed questions, with protracted argument to prove that indeed the attack was from the side of the plaintiff. .Fora correct decision of the question, touching the competency of the interrogatory propounded to Chowning, it is sufficient to say, that he had been used by the plaintiffs to prove the circumstances attending the commencement of the affray. And, to obviate the effect of nis testimony, the defendants asked him if he was not engaged some distance off, playing cards with a man of color at the beginning of the tight or shortly before. But the court, on the objection of theplaintiffif attorney, forbid the inquiry, because it was calculated to degrade, if not to subject the witness to punishment. The attorney of the defendants of course declined further inquiry on that subject, and took an exception to the decision of the court.
Now, by the opinion of this court, the witness might be asked about the gaming at the time of the commencement of the battle, but not previously. And inasmuch as previous time was embraced by the question, the witness, it is said, was properly forbidden to answer.
Questions, submitted to witnesses in the progress of a trial, are not reduced to writing; and, therefore, in preparing bills of exception, exact precision in phraseology in not attempted, nor to be expected. On the present occasion, the mode, the manner, and form, evidently escaped the attention of all. No objection had been made, that the question was double. If so, and the court had been able to perceive its force, the judge, in the exercise of ffis usual candor, would have said it, and afforded the counsel an opportunity, in the language of the opinion, to remodel his question. No, the judge decided the principle; he avowed the rule; and the counsel declined to perplex the judge by verbal modifications, if they had occurred; prepared his bill of exceptions, shewing the rule by which the court Constrained him, and appealed for the revision of this .honorable court, The bill of exceptions may not then *629 be supposed to give us the precise phraseology of either the-lawyer or the judge, but the principle decided. And now, all was right, because the style was not secundum artem. Whenever a want of form is objected in our courts to the administration of justice and right, certainly it would seem necessary, by all analogy, that it be pointed out, and an opportunity afforded the unskilful suitor or practitioner to correct the irregularity. It could not be insisted that where exception is taken alone, to the subject matter of a deposition, that the adversary would be required to prove notice, &c. &c.
But when we reflect that duplicity in pleading, where the most strict forms prevail, in written declarations, pleas, &c. prejudices hone; that surplusage does not vitiate; that utilisper inutila'non vitiatur, agreeably to the most rigid technicality, we must hope that" this honorable court will not still maintain, that an important and material interrogatory, orally and unceremoneously proposed, shall be vitiated and rendered wholly immaterial, because it shall contain a useless and immatej ial clause. If a declaration, plea, replication, verdict, judgment, &c. acts of the greatest deliberation, and which are expected to be more perfect, shall be sustained, because they have substance, ah though fraught with much useless matter, surely a material question should thus far be answered, although it may 'be redundant.
Should the rule, however, be found inflexible in law, that expletives, however immaterial, will defeat the question, although of the first importance, still we apprehend the decision was incorrect.
During the course of a trial in court, it is often necessary, for the sake of accuracy, that questions should be single; and, therefore, the bearing of every interrogatory may not at first be seen. Nay, as witnesses will sometimos pervert and prevaricate, it is sometimes expedient that they should not understand the purpose of the querist; and questions, therefore, must be indulged, the application of which may not be very evident as at first propounded. The accuracy of Mr. Chowning’s statement, it is admitted, might be impugned by shewing that he was engaged playing cards at the time, as this must have divided his attention.. Why *630 not shew that he was engaged so far off, and so shortly before, that he could not have witnessed the scene; and such was the probable object. Why not recaí the memory of the witness to the events by referring to the-fact that he was playing cards, and who his companion, at that very crisis? Surely such • a scope is permitted every day. Afid why may not an interrogatory to the witness of your adversary suppose more than one circumstance in a transaction?
The counsel, however, it would seem,.not only be - trayed a want of capacity to set forth an interrogatory with due specialty and precision, and thus to forfeit the-benefit of the testimony of their client, but they have-convicted him of a high crime, by departing from their legitimate sphere in quest of an advantage. How is this proved? It was' a struggle between the parties on the trial who made the first assault; if not in bar, at least in extenuation of damages. And, surely, previous threats were calculated to throw light on that subject. Therefore, the defendants introduced testimony to prove those threats. Bat, as the cause of this deadly hostility, the principal in tne combat stated, that the defendant was guilty of a criminal intercourse with his wife. The attorney of the plaintiff seized upon it as evidence of such intercourse, and labored the jury accordingly. The- defendant applied to the court to instruct that those declarations were not evidence of that fact; and the court refused the instructions. The honorable court frankly acknowledges it probable, that the jury, in consequence of that testimony, gave a higher verdict. It is acknowledged, likewise, in effect, that those declarations were no evidence of the guilt of Sodusky. Yet the court did right in refusing so toaay to the jury.
Why was this right? The court presided there to instruct the jury in matters of law. This was a question of law,.and of probable influence as is admitted. What excused the court in evading this point. It may not be for the judge to decide or submit questions of law to the jury as pleases him. His-duties are positive. And he was appealed to for their-discharge. He forbore, and higher damages was the probable consequence. To this testimony, then, which, impertinent as now admitted, and which proved nothing, in- *631 consequence of tbe refusal of the judge to pronounce the •law,the jury gave effect, and consequently gave a higher verdict. ' A verdict was rendered for more than would have been given if the law had been understood. And for thus much, of course, it is unjust. Yet this injustice is right. Wherefore? Because the defendant had attempted an advantage. As the defendant offered illegal testimony, then he ought to be left to the mercy of the concluding counsel. That testimony not only •obviated, but prevented to establish the guilt of the -defendant in a matter not involved inr the issue, and to prove which, it could not in law avail any thing. The .plaintiff had the privilege of an appeal to the judgment of the court, and a decision, if such was the law, that this testimony was irrelevant and proved nothing in issue. Had not the defendant equally the right to ask of the court to say, that although it might prove nothing for him, as certainly .it operated in law nothing against him? Can this honorable court deliberately .retain the position, that because either party shall offer improper testimony, that he thereby forfeits all right to ihe justice of the judge? Have they not mistaken the matter of fairness, when they suppose that because the defendant relied upon it to prove malice, that the plaintiff in his concluding remarks might uot only negative the malice imputed to him, but might contend that the defendant was guilty of adultery with his wife. This may be retaliation, but by what rule is not perceived ; we are assured none is to be found in the books. It does not seem exactly equal either; for the ■defendant afforded an opportunity to the plaintiff to -answer the charge which he predicated upon the testimony. Whereas, the defendant, for the first time, in the closing speech of his adversary, to which he can make no answer, finds himself accused and proved guilty of adultery. The judge, however, very sagely told the jury, that they were to take all the confession together, and this was right. So far as that confession' might be used against the man who made it, the jury should take the whole of it, compare all the parts, and give to it its just construction, whether the judge said this ..or not, we do not care to determine. Was it evidence of the guilt of the defendant? This court says no; and so must every jurist. Did the judge say that? Did ike jury so understand him? Did he so intend it? No. *632 All understood that the jury were in law at liberty’from that proof to find that McGee had sustained from So-dusky a much heavier injury than that of battery.
On this point we would only add, that the functions and duties of the judge,under all circumstances, require at his hand a correct enumeration of the law. And it cannot be found that where the court forbore to discharge this duty, under circumstances from which it m.ght he supposed that the jury was thereby influenced in , s veidict, the appellate court has ever refused to .ii-Mird a new trial.
Ai to tae participation of Dennis Unan, we would beg tlie court to reflect, that he is to be presumed innocen unid his gjil* he, proved. That although the witne ,-,es. several of them, speak of Onan being engaged in toe combat, they all use the singular, and several of them name Thomas. Insomuch that it is evident they' all ailude to a scene in which it is distinctly shewn that Thomas Onan was the combatant. This is certainly the tenor of the testimony, when the circumstances of the conflict are detailed. One witness, however, says, thai. the Onans and others eemed to be the company. Now, I ask if this is evidence? They seemed to be of the company. How? ,A]1 on the muster ground. But what did Dennis do? Did he, by word or deed, aid or abet? The answer must he, that unless Dennis Onan was proved • guilty by the. opinion of Mr. Neal, that the Onans and others seemed to be of Hie company, there is no proof against him.
A re-hearing is respectfully" requested.
Chief Justice Robertson delivered the following response, of-the court to th * petition for a re-hearing:
The court did no* e;in r efusing to instruct the jury that, as the plainti ffs in error had proved the declarations of John McGee, they had a right to believe, such parts as they should consider entitled to credence.
The fact, however, to which the motion referred, ought not, if believed, to have influenced the verdict. But the plaintiffs had introduced it, and dll not move to exclude it, nov did they ask the court to instruct the jury that it was irrelevant; and it is questionable whether *633 the court ought to have excluded it, after the plaintiffs bad made use of it.
At all events, it would not have been proper to ex-elude a part, without excluding the whole of John McGee’s declarations. We are, therefore, still of opinion, that the circuit court did not err in refusing to give the instruction which was asked. And on the other points touched in the petition, our opinion remains un-. changed.
Wherefore, the petition must be overruled.